THACKER, Circuit Judge,
dissenting:
The majority concludes that even if Maryland law required the insurer, Minnesota Lawyers Mutual Insurance Company *321 (“MLM”), to demonstrate actual prejudice in order to disclaim coverage of a malpractice claim untimely noticed by Baylor & Jackson, MLM has done so such that it may properly disclaim coverage. With respect, I cannot join the majority opinion.
In my view, the district court erroneously applied Maryland law in two crucial respects. First, the district court incorrectly concluded that Maryland Code Ann., Insurance § 19-110 did not apply to require MLM to prove it was actually prejudiced by Baylor & Jackson’s untimely notice. This was the central question addressed by the district court. Only in a cursory footnote did the district court predict that even if the statute applied to require MLM to show prejudice, it could have “easily” done so. Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F.Supp.2d 647, 662 n. 8 (D.Md.2012). It is on this slender reed that the majority decision rests. Because I conclude that the district court erroneously interpreted Maryland insurance law, both with respect to whether the actual prejudice requirement applies and whether it was ultimately satisfied, I respectfully dissent.
I.
The relevant facts are largely undisputed. In March 2006, Dawn Jackson of Baylor & Jackson initiated representation of certain defendants in a contract action in Maryland state court (the “Underlying Litigation”). When the plaintiffs in the Underlying Litigation moved for summary judgment on July 27, 2006, Baylor & Jackson responded on August 11, 2006, with unsupported allegations where disputed material facts were available and not presented and were required pursuant to the Maryland rules of civil procedure to support their position. The trial court promptly granted summary judgment against the firm’s clients on August 22, 2006. See ante at 314-15. The Maryland Court of Special Appeals affirmed on July 8, 2009, relying in large part on Baylor & Jackson’s conspicuous failure to present material facts sufficient to defeat summary judgment. Id. at 315 (observing that the underlying defendants’ opposition to summary judgment “ ‘was not supported by affidavits, deposition testimony, interrogatory answers, or any sworn evidence as required by Maryland Rule 2-501’ ” (quoting Thomas v. Robbins, No. 944, slip op. at 20-21 (Md.Ct.Spec.App. July 8, 2009) (unreported))).
On the same day the appeals court issued its decision, July 8, 2009, Baylor & Jackson notified its malpractice carrier, MLM, of the potential for a claim. The firm’s former clients then filed a malpractice action against the firm over a month later, on August 11, 2009. True to its word, MLM defended Baylor & Jackson for over a year, until it abruptly disclaimed coverage on October 1, 2010. At the time MLM disclaimed, mediation in the malpractice case had been scheduled just two weeks later on October 11, 2010, with trial scheduled to start December 6, 2010.
MLM filed this declaratory action on September 29, 2010, in the United States District Court for the District of Maryland. On cross motions for summary judgment, the district court granted judgment to MLM. See Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F.Supp.2d 647 (D.Md.2012). This appeal followed.
II.
A.
The Untimely Notice of a Claim
As below, Baylor & Jackson vigorously disputes the date on which its malpractice claim was deemed “made” under the terms *322 of its policy with MLM.[1] In the firm’s view, the claim was not made until the Maryland appeals court issued its decision on July 8, 2009. Using that date as a reference, its claim to the insurer would have been timely under the policy then in force. Like the district court and the majority here, I agree that a claim was “made” in this case when Baylor & Jackson filed an unsupported response to the motion for summary judgment on August 11, 2006. See ante at 317-19. That is, the firm “kn[ew] or reasonably should [have] know[n]” that filing a response devoid of sufficient material facts, where such facts were available, “would support” a demand for damages. J.A. 275. MLM suggests that Baylor & Jackson should have known on August 22, 2006, the date on which the state trial court granted summary judgment, though use of this latter date makes no difference: either way, the claim was made while the 2006 policy governed. Because I agree that the claim was made on August 11, 2006, the 2006 policy applies.
The 2006 policy was effective August 1, 2006, to August 1, 2007. Under the terms of the policy, a claim is covered only if made and reported during the policy period, within 60 days after the end of the policy period, or during the extended reporting period.[2] Although the claim was “made” during the period, that is, on August 11, 2006, it was not reported until July 8, 2009. Accordingly, Baylor & Jackson’s notice was untimely.
B.
Maryland’s Prejudice Requirement
As below, Baylor & Jackson alternatively argues that even if its notice of the claim was untimely, Maryland law requires MLM to prove it was actually prejudiced by the untimely notice before it may lawfully disclaim coverage. See Md.Code Ann., Ins. § 19-110. MLM responds that § 19-110 does not apply such that they need make no showing of actual prejudice in order to disclaim. Addressing this central question, the district court concluded the statute did not apply, thus relieving MLM from its need to show actual prejudice by a preponderance of the evidence. The majority assumes without deciding that the statute applies because, in their view, MLM established actual prejudice in either event. See ante at 319-20. Because I do not agree that actual prejudice was shown, I must first determine whether the statute applies before reaching the latter question.
1.
Section 19-110: Disclaimers of Coverage on Liability Policies
Section 19-110 regulates the circumstances in which an insurer may disclaim *323 coverage on a liability insurance policy in Maryland. It states as follows:
An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.
Md.Code Ann., Ins. § 19-110. The statute was most recently interpreted in Sherwood Brands, Inc. v. Great American Insurance Co., 418 Md. 300, 13 A.3d 1268 (2011). The district court relied on Sherwood Brands and T.H.E. Insurance Co. v. P.T.P. Inc., 331 Md. 406, 628 A.2d 223 (1993), in determining that the statute did not apply. Contrary to the district court’s reasoning, however, Sherwood Brands makes clear that the statute applies in this case to require MLM establish actual prejudice before it can properly disclaim coverage.
In Sherwood Brands, 13 A.3d at 1270, Great American had issued to Sherwood, a manufacturing company, a series of annual policies providing liability insurance. The relevant policy term was effective May 1, 2007, to May 1, 2008. Id. On December 11, 2007, a former employee filed with the Massachusetts Commission Against Discrimination a claim asserting breach of contract, wrongful termination, and many other complaints. Id. at 1272. He also filed a related complaint in Massachusetts state court on March 28, 2008, against Sherwood and its subsidiaries, asserting similar theories. Id. Both the agency proceeding and the Massachusetts state court proceeding were filed and served on Sherwood during the pendency of the 2007-08 policy. Id. Sherwood did not notify Great American of the claim until October 27, 2008, a date conceded to be after the end of the policy period. Id. at 1271-72. Great American denied coverage because the notice was untimely. Id. at 1272. During the subsequent coverage suit, the trial court granted summary judgment to Great American, concluding the untimely notice justified the disclaimer and the insurer was not required to demonstrate prejudice resulting from Sherwood’s late notice. Id. at 1273-74. The Maryland Court of Appeals vacated the trial court’s judgment and held that § 19-110 applied to the policy and, therefore, the insurer was required to show it was actually prejudiced by Sherwood’s late notice before disclaiming coverage. Id. at 1270.
Sherwood Brands began its discussion by engaging in a historical exploration of the development of § 19-110 in Maryland. This included several key cases and legislative amendments to the state code which shaped Maryland’s notice-prejudice jurisprudence, as well as an explanation of the types of policies implicated by § 19-110.[3] See id. at 1277-79. Rather than simply join most jurisdictions by concluding that the prejudice requirement does not apply to “reporting-type” claims-made policies, the court recognized that Maryland’s statute, § 19-110, softens the harsh result (a forfeiture) that would follow from the late notice of an insurance claim. See Sherwood Brands, 13 A.3d at 1277 (“Although the policy may speak of the notice provision in terms of ‘condition precedent,’.... nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the in *324 sured the very thing paid for.... Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach.” (internal quotation marks omitted)). In view of these principles, the court concluded that § 19-110’s prejudice requirement may apply to a reporting-type claims-made policy.[4] See id. at 1284-85 (footnotes omitted).
Sherwood Brands turned next to the text and policies underlying § 19-110, explaining as follows:
Section 19-110 begins by stating that “[a]n insurer may disclaim coverage ... on the ground that the insured ... has breached the policy ...Accordingly, in order for § 19-110 to be in play, the insured must breach the insurance policy “by failing to cooperate with the insurer or by not giving the insurer required notice.” See [St. Paul Fire and Marine Ins. Co. v.] House, 315 Md. [328] at 355, 554 A.2d [404] at 417 [ (1989) ] (stating that, because the statute requires the insured to have “breached the policy,” the statute only “potentially applies to ‘any’ liability insurer or policy”) (emphasis in original). Central to whether § 19-110 applies to require Great American to show that it was prejudiced by Sherwood’s late-delivered notice is determining whether, in giving Great American notice more than ninety days after the expiration date of the 2007-08 Policy, Sherwood “breached the policy.” If the notice provisions of the 2007-08 Policy are “conditions precedent” to coverage, then Sherwood does not “breach the policy” by failing to obey the notice provisions; the nonoccurrence of a condition precedent does not constitute a breach, it merely relieves the other party from performing under the contract/policy. On the other hand, if the notice provisions are deemed covenants, Sherwood’s failure to give Great American notice no later than ninety days after the expiration date of the 2007-08 Policy would constitute a “breach of the policy,” such that § 19-110 would apply to require Great American to show that it was prejudiced by Sherwood’s late-delivered notice.
Id. at 1286 (emphasis in original and citation omitted). The court further explained that even if the policy language expressly denotes the notice requirement as a “condition precedent” to coverage, “the purpose and effect” of § 19-110 “mandates that the notice provisions of the Policy be treated as covenants, not conditions.” Id. at 1286-87.
The court concluded as follows:
We hold that § 19-110 does not apply, as was the case in T.H.E., to claims-made policies in which the act triggering coverage — usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies — does not occur until after the expiration of the liability policy, as this non-occurrence of the condition precedent to coverage is not a “breach of the policy,” as required by the statute. On the other hand, we hold that § 19-110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the in *325 sured does not comply strictly with the policy’s notice provisions. In the latter situation, § 19-110 mandates that notice provisions be treated as covenants, such that failure to abide by them constitutes a breach of the policy sufficient for the statute to require the disclaiming insurer to prove prejudice.
Id. at 1288 (emphasis supplied). In this case, we face the latter scenario.
2.
Application of § 19-110 and Sherwood Brands
In view of Sherwood Brands, the key question we must ask in order to determine if § 19-110 applies is when did the act triggering coverage occur? If it occurred after the expiration of the liability policy, as was the case in T.H.E., there is simply no policy which the insured can breach when it fails to notify the insurer of the claim. Since there’s no policy, there’s no breach, and the express terms of § 19-110 do not apply. On the other hand, if the act triggering coverage occurred during the policy term, but where the insured fails to notify the insurer according to the policy’s requirements, the notice requirement is a covenant that is breached, allowing the insurer to disclaim coverage only if it can show actual prejudice. In this case, we look to the policy language to determine when the act triggering coverage occurred. The policy states:
A CLAIM is deemed made when:
(1)a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) a lawsuit is served upon the INSURED seeking DAMAGES; or
(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.
J.A. 275.
Neither of the first two options apply here. Instead, the act triggering coverage in this case is subsection (3). Indeed, MLM itself contends that Baylor & Jackson knew or reasonably should have known that their failure to supply evidence in opposition to a motion for summary judgment would support a demand for damages. That date, as suggested by MLM, is either the date on which Baylor & Jackson filed their summary judgment response, August 11, 2006, or when the trial court granted summary judgment, August 22, 2006. Whichever the date, both clearly fall within the policy term for the 2006 Policy, which was effective August 1, 2006, to August 1, 2007. Because the act triggering coverage in this case occurred during the relevant policy term, the notice provision of the policy is a covenant, not a condition precedent, and thus § 19-110 applies. See Sherwood Brands, 13 A.3d at 1288 (“[W]e hold that § 19-110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy’s notice provisions.”).[5]
*326 MLM must therefore establish it was actually prejudiced by the untimely notice in order to properly disclaim coverage.
3.
Proof of Actual Prejudice
a.
Burden on the Insurer
MLM has not demonstrated actual prejudice by a preponderance of the evidence as required by § 19-110, offering only speculation as to what it would have done had notice been timely.
“The insurer bears the burden of proof to show prejudice.” Prince George’s Cnty. v. Local Gov’t Ins. Trust, 388 Md. 162, 879 A.2d 81, 97 (2005) (citing Md.Code Ann., Ins. § 19-110 (insurer must establish actual prejudice “by a preponderance of the evidence”)); Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co., 347 Md. 32, 698 A.2d 1078, 1083 (1997) (under § 19-110, “the insurer must establish by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer” (emphasis supplied)).
b.
More Than Mere Speculation Necessary
Critically, § 19-110 requires an insurer to prove that it suffered actual harm: “The requirement of ‘actual prejudice’ means that an insurer may not disclaim coverage on the basis of prejudice that is only possible, theoretical, conjectural, or hypothetical.” Gen. Acc. Ins. Co. v. Scott, 107 Md. App. 603, 669 A.2d 773, 779 (1996). “Nor is it enough to surmise harm that may have occurred by virtue of the passage of time; prejudice cannot be presumed from the length of the delay.” Id. An insurer may properly disclaim coverage on the basis of untimely notice only if it can prove that — as a matter of fact — it actually suffered prejudice in its ability to investigate, settle, or defend the claim. See Sherwood Brands, 13 A.3d at 1287.
Naturally, the potential for prejudice due to late notice is greatest where “the insurer has been deprived of all opportunity to defend” the claim made against the insured. Prince George’s Cnty., 879 A.2d at 98 (internal quotation marks omitted). In fact, Maryland’s highest court has concluded that an insurer is prejudiced as a matter of law when the insured fails to notify the insurer of the incident, claim, and lawsuit until after an adverse judgment has been entered against the insured. See id. at 100. Indeed, the majority quotes Prince George’s County for this principle, stating “‘The case for finding prejudice as a matter of law is strongest for primary insurers who receive notice after a judgment because the late notice deprives the primary insurers of their right to control the investigation, defense, and settlement of claims.’ ” Ante at 320 (quoting Prince George’s Cnty., 879 A.2d at 97). True enough. However, the proposition does not support the majority’s conclusion in view of the facts of this case.
In Prince George’s County, the Maryland court was speaking to the malpractice judgment entered against the insured— not about underlying conduct by the insured giving rise to the lawsuit against it. Indeed, in this case, the insured notified MLM several weeks before it was sued by its former clients. This is not the case of an insured who failed to notify its insurer *327 until after a malpractice judgment is entered against it (the insured).
c
Actual Harm
Regardless, as Maryland case law articulates, prejudice is all about harm to the insurer. See Prince George’s Cnty., 879 A.2d at 95 (“If the insured violates the notice provision without harming the interests of the insurer — i.e. without prejudice — then there is no reason to deny coverage.”). Thus, the question is not how MLM could have helped Baylor & Jackson had notice been timely, but how was MLM actually harmed by its inability to do so as a result of the untimely notice.
In my view, MLM has not established by a preponderance of the evidence that it was actually harmed by Baylor & Jackson’s untimely notice. The 2006 Policy term was in force August 1, 2006, to August 1, 2007, and included an additional 60-day extension period. The date on which the insured reported the “claim” to the insurer was August 11, 2009, the same day the appeals court decision affirmed the summary judgment granted against the firm’s clients. Thus, MLM knew as of that date that a malpractice suit against Baylor & Jackson might be forthcoming. Indeed, once the suit was brought, MLM provided a defense to Baylor & Jackson for more than a year before disclaiming coverage. This denial of coverage took place just weeks before a scheduled mediation conference on October 11, 2010, and only three months before trial. It is telling that there is no suggestion from MLM that it disclaimed coverage at that time because they found themselves somehow harmed by the late notice.[6] MLM simply asserted (at the time) that it was disclaiming pursuant to the terms of the Policy requiring timely notice. See J.A. 339.
MLM’s only argument on this issue does not address the harm or prejudice to itself, but only to how it might have assisted Baylor & Jackson had notice been timely, namely, that MLM was unable to assist the firm in possible “mitigation and remediation efforts.” Appellee’s Br. 38. Attempting to flesh this out, MLM asserts, “[h]ad Baylor & Jackson given timely notice of the malpractice to MLM, MLM could have advised Baylor & Jackson to admit fault [in a motion for reconsideration], argue that the error was through no fault of Baylor & Jackson’s clients, and argue that Baylor & Jackson’s error did not prejudice the opposing side.” Id. at 38-39 (emphasis supplied). MLM suggests, “[s]ueh an argument that an attorney’s conduct constitutes excusable neglect has persuaded previous courts to forgive the mistake and permit a refiling,” but notably cites to no cases and makes no mention of its own actual injury. J.A. 70. This contention is speculation at best and again does not address the issue of actual harm caused to MLM by the late notice. MLM has offered no other grounds for its contention that it suffered actual prejudice.
The district court accepted the insurer’s argument in a footnote, stating,
Even if MLM were required to show prejudice, it could have easily done so by showing it had been excluded from the post-summary-judgment and appellate proceedings in the Robbins v. Thomas case; those were the only opportunities MLM could have had to fashion a request for relief. Whether it would have *328 been successful with such a request is immaterial to the prejudice flowing from the lack of notice that would have enabled it to participate meaningfully in the litigation.
Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F.Supp.2d 647, 662 n. 8 (D.Md.2012). I am not as easily persuaded as the district court, for I do not see how the above possibilities establish actual harm as a matter of fact by a preponderance of the evidence. The suppositions proffered by the district court, even if reasonable, are still speculative, and do not speak to any harm MLM actually suffered.
The majority reasons that Baylor & Jackson’s late notice “hindered MLM’s ability to fulfill its contractual duties,” observing that by the time the appeals court issued its opinion, “MLM had few options” by the time it received notice. Ante at 320. To the contrary, MLM had the opportunity to mitigate the potential malpractice claim before it was even filed, as it received notice of a possible claim over a month before litigation commenced. And even thereafter, MLM defended the case for over a year before abruptly disclaiming coverage just as the pretrial practice reached its zenith. Even giving MLM the benefit of the doubt, it is far from clear that the untimely notice left them with “few options.” Id.
Instead, the majority rests its analysis on MLM’s mere assertion that the untimely notice “ ‘prevented [MLM] from advising Baylor & Jackson to file a motion for reconsideration, assisting Baylor & Jackson in crafting arguments for that motion, and/or assisting in the appeal.’ ” Id. (quoting Appellee’s Br. 38). But as explained above, even if we assume MLM knew of the malpractice immediately, advised the firm to file the motion for reconsideration, and otherwise assisted in the appeal, MLM has presented no facts showing how it was actually harmed by its inability to take these discreet steps.
The speculative nature of MLM’s claims of prejudice stands in stark contrast to those Maryland cases where an insured notified its insurer of a claim so late that it had little or no opportunity to participate in or otherwise influence the litigation against the insured. See Prince George’s Cnty., 879 A.2d at 100 (insurer actually prejudiced where insured “failed to notify insurer of the incident, claim, and lawsuit until after an adverse judgment was entered” against the insured); see id. at 94-96 (citing cases).
But even in a case far closer than presented by this appeal, a Maryland appeals court did not find actual prejudice. In General Accident Insurance Co. v. Scott, 107 Md.App. 603, 669 A.2d 773, 775-77 (1996), cert. denied, 342 Md. 115, 673 A.2d 707 (1996), the insured did not notify the insurer of a claim until 29 months after the accident giving rise to the claim. The insurer contended that it was prejudiced by the delay because it could not fully investigate the underlying facts, evaluate its potential exposure, participate in the decision as to whether to submit the case to arbitration, and decide whether to set high/low parameters. Id. at 779. The Maryland Court of Special Appeals concluded that the insurer’s allegations were insufficient to show that it suffered actual prejudice because “conclusory allegations about difficulties and inconveniences that would result from any delay in notification are not sufficient” to create a material dispute of fact with respect to the issue of prejudice. Id. (emphasis in original). I submit that the case before us presents far fewer persuasive claims of prejudice than in Scott, a case where no actual prejudice was found to have even been alleged, much *329 less proven to a preponderance of the evidence.
Had MLM been actually prejudiced by the late notice, I would have expected it to have presented facts before the district court indicating as much. It did not there and has not here.
Perhaps recognizing that it failed to prove actual prejudice, MLM asks us, alternatively (and tellingly), to remand the case to give it another chance. See Appel-lee’s Br. 37 (“If this Court, however, determines that Section 19-110 does apply to the Policy, it should remand this case to the District Court for a determination as to whether MLM has established actual prejudice. While the District Court noted in a footnote that MLM would easily be able to show actual prejudice, it did not actually reach that issue and it did not make a full factual finding in its Opinion.” (emphasis supplied)). This argument leaves the distinct impression that MLM is well-aware of the absence of actual prejudice.[7]
III.
At bottom, the purpose of a notice requirement in an insurance policy is to protect the insurer “by affording the insurer the opportunity to acquire full information about the circumstances of the case, assess its rights and liabilities, and take early control of the proceedings.” Prince George’s Cnty., 879 A.2d at 95. But under Maryland law, if the insurer is not actually harmed by the untimely notice, “then there is no reason to deny coverage.” Id. The notice clause should not be used by the insurer as a “technical escape-hatch by which to deny coverage in the absence of prejudice.” Id. (internal quotation marks and citation omitted). MLM should not be allowed to so easily subvert the public policy embodied in Maryland’s considered legislative judgment without showing how it was actually harmed by the untimely notice. As a result, I would reverse the judgment of the district court.

. The relevant policy language provides as follows:
A CLAIM is deemed made when:
(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES:
(2) a lawsuit is served upon the INSURED seeking DAMAGES; or
(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.
J.A. 275. Citations to the "J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. The policy at issue is a “claims-made"-type policy, to be distinguished from an "occurrence”-type policy. See Sherwood Brands, Inc. v. Great Am. Ins. Co., 418 Md. 300, 13 A.3d 1268, 1277-78 (2011) (explaining the difference between occurrence and claims-made policies).

. In 1996, the Legislature recodified former § 482 to Maryland Code (1997, 2006 Repl. Vol.), Insurance Article § 19-110.

. This conclusion directly conflicts with the common law of many states. See Sherwood Brands, 13 A.3d at 1282-83. Notably, the court also explicitly acknowledged that two decisions of the United States District Court for the District of Maryland and one unpublished decision of our court erroneously applied Maryland law by concluding that reporting-type claims-made policies are not subject to the actual prejudice requirement of § 19-110. See id. We should not compound those errors here.

. In holding otherwise, the district court simply stated that the policy at issue here is more like the one in T.H.E., and emphasized the fact that the policy language in this case makes the notice requirement a condition for coverage. But as Sherwood Brands makes clear, Maryland law does not care how the notice provision is couched when determining whether the provision is a covenant or condition precedent; what matters is when the act triggering coverage occurred. If the act triggering coverage (i.e., when the claim is "made”) occurred during the policy period, the statutory prejudice requirement applies. If the act triggering coverage falls outside of the policy term, the prejudice requirement *326 does not apply because there was never a policy to be breached. The district court did not address this pivotal distinction.

. See Sherwood Brands, Inc. v. Hartford Acc. and Indent. Co., 347 Md. 32, 698 A.2d 1078, 1083 (1997) (observing that delay in giving notice apparently played no material role in insurer’s decision not to defend where insurer did not raise prospect of prejudice until coverage suit).

. MLM has not articulated any sound basis for remand. It filed this action for a declaratory judgment and has the burden of proof. MLM has simply failed to present any facts to satisfy its burden.