13 A.3d 1268

**SHERWOOD BRANDS, INC. et al.**

v.

**GREAT AMERICAN INSURANCE COMPANY.**

No. 62, Sept. Term, 2010.

Court of Appeals of Maryland.

Feb. 24, 2011.

302

James Brault and Albert D. Brault (Joan F. Brault of Brault Graham, LLC, Rockville, MD), on brief, for appellants.

Gabriela Richeimer (Cathy A. Simon of Troutman Sanders LLP, Washington, D.C.), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

This case demands that we revisit Maryland's insurance contract claim notice-prejudice jurisprudence, a body of law that has laid dormant largely since *T.H.E. Insurance Co. v. P.T.P. Inc.*, 331 Md. 406, 628 A.2d 223 (1993). As the trial judge observed, this involves "quite a workout." Sherwood Brands, Inc. ("Sherwood") appeals from the judgment of the Circuit Court for Montgomery County—granting summary judgment in favor of Appellee, Great American Insurance Company ("Great American")—concluding that Great American acted properly in denying coverage under a third-party liability policy it issued Sherwood because Sherwood neglected to notify Great American of claims made against Sherwood within ninety days of the expiration of the policy period, as the policy required. Great American's entitlement to judgment was not dependent on it demonstrating how it may have been prejudiced by Sherwood's tardy notice.

We hold that, for reasons to be explained more fully *infra*, pursuant to Maryland Code (1997, 2006 Repl.Vol.), Insurance Article § 19–110 ("Disclaimers of coverage on liability policies"), which provides that "[a]n insurer may disclaim coverage on a liability insurance policy on the ground that the insured ... has breached the policy ... by not giving the insurer required notice only if the insurer establishes ... that the lack of ... notice has resulted in actual prejudice to the insurer," Great American is required to demonstrate how it was prejudiced by Sherwood's late-bestowed notice. This is so notwithstanding that the policy at issue is a "claims-made policy." Accordingly, we vacate the judgment of the Circuit Court for Montgomery County and remand the case to that court for further proceedings not inconsistent with this opinion.

## FACTS AND LEGAL PROCEEDINGS

Sherwood,[1] a North Carolina corporation with its principal office in Rockville, Maryland, is a manufacturer of confections

---

1. Also plaintiffs in the trial court were Sherwood Brands of RI, Inc., Sherwood Brands of Massachusetts, LLC, Sherwood Brands ZIP LLC—

and specialty gifts. Great American issued Sherwood a series of annual "Directors', Officers', Insured Entity and Employment Practices Liability Insurance" policies, the most relevant one of which (Policy DOL5741758) was effective 1 May 2007 to 1 May 2008 (the "Policy"). Section I of the Policy, "Insuring Agreements," provides:

A. The Insurer shall pay on behalf of the Insured Persons all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim ... first made against the Insured Persons during the Policy Period ... for a Wrongful Act, except for any Loss which the Company actually pays as indemnification

B. The Insurer shall pay on behalf of the Company all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim ... first made against the Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act, but only to the extent the Company is required or permitted by law to indemnify the Insured Persons.

C. The Insurer shall pay on behalf of the Insured Entity all Loss which the Insured Entity shall be legally obligated to pay as a result of a Securities Claim first made against the Insured entity during the Policy Period or the Discovery Period for a Wrongful Act.

Section III of the Policy, "Definitions," provides:

A. "Claim" shall mean:

(1) a written demand for monetary or non-monetary relief made against any Insured and reported to the Insurer ...

(2) a civil, criminal, administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or

---

subsidiaries of Sherwood Brands, Inc.—and Uziel and Amir Frydman—officers and directors of Sherwood Brands, Inc.

similar document, including any proceeding initiated against any Insured before the [EEOC] or any similar governmental body.

Finally, Section VIII, "Notice of Claim," provides, in pertinent part:

 A. The Insureds shall, as a condition precedent to their rights under this Policy, give the Insurer notice in writing of any Claim....

 (1) as defined in Section III.A.(1) which is made during the Policy Period. Such notice shall be given prior to the end of the Policy Period;

 (2) as defined in Section III.A.(2) [*supra*] which is made during the Policy Period. Such notice shall be given as soon as practicable, but in no event later than ninety (90) days after the end of the Policy Period.

On 11 December 2007, one Gerald D. Koelsch filed claims against Sherwood and its subsidiaries with the Commonwealth of Massachusetts Commission Against Discrimination, alleging breach of contract, wrongful termination, breach of the duty of good faith and fair dealing, defamation, fraudulent misrepresentation, promissory estoppel, and negligent infliction of emotional distress.[2] He filed a related complaint in the Plymouth County (Massachusetts) Superior Court on 28 March 2008 against Sherwood and its subsidiaries, asserting similar counts and related statutory violations.[3] We treat as undisputed for the purposes of this opinion that both of these actions were filed and served on Sherwood during the time period that the 2007–08 Policy was in effect.[4] Sherwood did not notify Great

---

2. The record is unclear as to the precise date on which Sherwood received a copy of the claims filed with the Commission Against Discrimination action, but the parties here agree that such receipt occurred sometime before March 2008 and before the expiration date of the 2007–08 Policy.

3. The record reflects that the complaint before the Massachusetts Commission Against Discrimination was dismissed, because "[c]omplainant wishe[d] to file a civil action on the same matter in court."

4. In its motion for summary judgment in the trial court, Sherwood argued that "[t]he undisputed evidence is that service of the complaint

American of the Koelsch claims until 27 October 2008, a date concededly greater than ninety days after the expiration date of the Policy (1 May 2008).

On 26 November 2008, Barbara Bryan ("Bryan"), a Senior Claims Attorney with Great American, wrote to Sherwood, explaining why the insurer denied coverage for the Koelsch claim. Although the Massachusetts lawsuit "constitutes an action as defined under the policy" and the "Claim made date is ... within the May 1, 2007—May 1, 2008 Policy Period," Bryan pointed to Section VIII.A. of the policy—the ninety-day notice requirement—and explained that, because the Policy ended on 1 May 2008 and Great American did not receive notice of the suit until 27 October 2008, "there is no coverage for this Claim under the policy."

Meanwhile, across the globe, on 17 October 2007, Plastic Magen Ltd. and Plasto Kit Ltd. filed suit (unrelated to the Koelsch suit) against Sherwood, its officers, and other entities in the Tel–Aviv Jaffo (Israel) District Court, alleging breach of contract, "deceit and conspiracy," "lack of good faith," "illegal enrichment process," "false presentation," and other counts.[5] The parties to the present case agree that service of process on Sherwood was made in the Israeli suit sometime in December 2007, and thus it appears undisputed that notice of this action was filed against and served on Sherwood during the effective period of the 2007–08 Policy. Sherwood notified Great American of this suit on 6 November 2008, a date

in th[e Massachusetts court] case occurred on June 6, 2008, during the May 1, 2008 to May 2, 2009 Policy Period," and thus, its 28 October 2008 notice to Great American was timely under the 2008–09 Policy. In its brief before this Court, however, Sherwood states that "[a] separate complaint was subsequently filed in ... Massachusetts Superior Court on March 3, 2008, also during the 2007 Policy Period against these same insureds." Thus, it appears that, for purposes of this appeal, Sherwood waived its argument vis à vis the 2008–09 Policy.

5. Apparently, the plaintiffs in the Israeli case filed suit in June 2007, but did not name Sherwood as a defendant at that time; the complaint was amended on 17 October 2007 to join Sherwood as a defendant.

conceded again to be greater than ninety days following the expiration date of the 2007–08 Policy.

Bryan wrote again to Sherwood, on 16 December 2008, explaining the insurer's denial of coverage of the claim represented by the Israeli lawsuit. As with the Massachusetts suit, Great American conceded that the Israeli lawsuit is a "Claim made within the May 1, 2007—May 1, 2008 Policy Period," but denied coverage because notice to Great American of the claim was not given until 6 November 2008, more than ninety days after the end of the 2007–08 Policy. Bryan continued:

> In acknowledging the tendering of this matter would involve a late notice issue, you mentioned having previously litigated the issue in Maryland, winning a case now cited on the late notice-prejudice issue. I have had the opportunity to view the case you mentioned,[6] which unfortunately is inapplicable to the Great American policy at issue, as your previous litigation involved your general liability carrier and did not involve a claims made a reported Director and Officers policy.

On 10 February 2009, Sherwood, its officers and subsidiaries filed in the Circuit Court for Montgomery County, Maryland, a "Complaint for Breach of Contract and Declaratory Relief" against Great American, alleging that the Massachusetts and Israeli actions were "claims" under the 2007–08 Policy and Great American breached the Policy when it "refused to pay any losses Plaintiffs may or are obligated to pay as a result of the lawsuit filed by Mr. Koelsch and the law suit filed by Plastic Magen Ltd. and Plasto Kit Ltd." Sherwood also averred, regarding the Massachusetts and Israeli actions, that Great American "has not been prejudiced by any alleged delay in notification. No relevant documents have been lost

---

6. It is unclear from the record the case to which Bryan refers. It well may be *Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.*, 347 Md. 32, 698 A.2d 1078 (1997). *See Sherwood Brands, Inc.*, 347 Md. at 42, 698 A.2d at 1083 ("In order to avoid its duty to defend or to indemnify on the ground of delayed notice, the insurer must establish by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer.").

or destroyed. No known witnesses are missing. No evidence has been lost or destroyed. No adverse rulings have [been] obtained in the underlying suit for wrongful termination." Accordingly, Sherwood requested the Circuit Court enter a judgment declaring that Great American "is obligated to pay all losses the Plaintiffs become legally obligated to pay in the underlying suit[s]" and that Sherwood "is obligated to pay all costs incurred in bringing this Complaint for Breach of Contract and Declaratory Relief...." Joined with its complaint, Sherwood filed a motion for summary judgment, urging arguments similar to those it makes to this Court.[7]

In its answer, Great American denied that it breached the policies with Sherwood, and denied that the respective notices of the Massachusetts and Israeli actions were timely. Further, Great American tendered twenty affirmative defenses, only one of which is relevant to the present appeal: "Coverage for the Underlying Actions under the 2007[–08] Policy is barred due to [Sherwood's] failure to give written notice to Great American as soon as practicable and no later than within ninety (90) days after the end of the Policy Period." Shortly after filing its answer, on 22 May 2009, Great American filed an opposition to Sherwood's motion for summary judgment, and a cross-motion for summary judgment, advancing arguments similar to those it offers to this Court.

On 14 July 2009, the Circuit Court heard oral argument on the motions. Denying Sherwood's motion for summary judgment and granting Great American's cross-motion for summary judgment, the trial court explained:

> [I]t all turns on what type of policy this is going to be construed to be, whether it's a straight-up claims made, or is it a claims made with a reporting period. If it is the latter, then the insurance company would have to show

---

7. Alternatively, Sherwood argued that, regardless of whether notice was proper under the 2007–08 Policy, "the 2008[–09] Policy defines the term claim in terms of when a complaint is filed on an insured. As the underlying suit papers were served on Sherwood during the 2008[–09] Policy Period, notice was timely" under the 2008–09 Policy.

actual prejudice for the late notice before it would not have to pay benefits under the policy.

But here, in section 8 of the actual policy, it says "The insureds shall, as a condition precedent to their rights under the policy, give the insurer notice in writing of any claim." In this case we drop down to 2, as defined in, it's actually a civil proceeding, "which is made during the policy period."

"Such notice shall be given as soon as practicable, but in no event later than 90 days after the end of the policy period."

So I base my decision based on that section. And I find that this particular policy is analogous to the policy that was construed in the [*T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 628 A.2d 223 (1993) ] case. And so I find that the policy, the Great American policy in question here is a claims made with reporting period, and therefore that the defendant is not required to show actual prejudice to deny coverage for claims.

So bottom line is I am granting the defendant, Great American Insurance Company's, cross-motion for summary judgment. . . .

Sherwood noted a timely appeal to the Court of Special Appeals. On our initiative, we issued a writ of certiorari, *Sherwood Brands v. Great American Ins.*, 415 Md. 114, 999 A.2d 179 (2010), before the intermediate appellate court decided the appeal, to consider "whether the lower court erred by ruling that [Great American] was not required by Section 19–110 of the [Maryland] Insurance Code to show actual prejudice in order to deny coverage based on the [Sherwood]'s failure to comply with the notice condition of the 2007[–08] insurance policy at issue. . . ." [8]

---

**8.** In its certiorari petition and brief, Sherwood frames another question, "whether the lower court erred by not entering summary judgment declaring that appellee is required to defend and indemnify appellant in both underlying lawsuits." Because Sherwood—in its opening brief, reply brief, or at oral argument before this Court—has not marshaled support for this question with any argument, we deem this issue

## STANDARD OF REVIEW

"The standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*, that is, whether the trial court's legal conclusions were legally correct. Under this standard, we review the trial court's ruling on the law, considering the same material from the record and deciding the same legal issues as the circuit court." *Messing v. Bank of America, N.A.*, 373 Md. 672, 684, 821 A.2d 22, 28 (2003) (internal citations omitted); *see Tyler v. City of College Park*, 415 Md. 475, 498, 3 A.3d 421, 434 (2010) ("Whether a circuit court's grant of summary judgment is proper in a particular case is a question of law, subject to a non-deferential review on appeal.").

## ANALYSIS

### I. Md.Code (1997, 2006 Repl.Vol.), Insurance Article § 19–110: Its Origin and Application

The first seed, leading ultimately to the development of Md.Code (1997, 2006 Repl.Vol.), Insurance Art., § 19–110, was sown in *Watson v. United States Fidelity and Guaranty Co.*, 231 Md. 266, 189 A.2d 625 (1963). In *Watson*, the carrier issued an insurance policy to an individual, Watson, that "required the insured, as a condition precedent, to give written notice of an accident to the insurer 'as soon as practicable' following an accident." *Watson*, 231 Md. at 269, 189 A.2d at 626. Watson was involved in an automobile accident on 5 March 1961, but did not notify the insurer until 8 April 1961. A few days later, the insurance company informed Watson that, "in view of the fact that prompt notice of the accident had not been given to it," it denied the claim. *Watson*, 231 Md. at 270, 189 A.2d at 626. On appeal, the insured argued "that the modern view which holds that the insurer must show

---

abandoned. *See, e.g., Klauenberg v. State*, 355 Md. 528, 551, 735 A.2d 1061, 1073 (1999) ("[A]ppellant waived the issue because he failed to present an argument in his brief."). In any event, an appellate victory in its favor regarding the notice-prejudice issue is not dispositive necessarily as to whether the trial court should have entered summary judgment in Sherwood's favor.

actual prejudice in order to be relieved of its obligations under a policy is clearly the better view, and the one now being followed by a majority of jurisdictions." *Watson*, 231 Md. at 272, 189 A.2d at 627. The Court, rejecting Watson's argument that "even though the notice condition ... involved is a condition precedent, it is unavailable to the Company as a denial of liability ... unless the Company was prejudiced by the failure to give prompt notice," held that "[t]his contention is not in accord with the Maryland decisions, nor with the weight of authority elsewhere in the country," holding ultimately that, because the insured did not contest that he had not given notice "as soon as practicable," the insurer was within its rights to deny coverage. *Id.; see Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 181, 879 A.2d 81, 93 (2005) ("In *Watson*, we held that an insurer need not show prejudice in order to deny coverage to an insured who breached the notice provision of an insurance policy.").

The Legislature's response to *Watson* was prompt and decisive. At the legislative session immediately following *Watson*, the General Assembly enacted former Maryland Code (1957, 1972 Repl.Vol.), Article 48A, § 482. *See* Chapter 185 of the Acts of 1964; *Local Gov't Ins. Trust*, 388 Md. at 181, 879 A.2d at 92–93 ("In passing the statute, the Legislature apparently aimed to abrogate the common law rule as articulated in *Watson* ....."); *St. Paul Fire & Marine Ins., Co. v. House*, 315 Md. 328, 352, 554 A.2d 404, 416 (1989) ("Section 482 ... appears to have been enacted to remedy the harsh result of the *Watson* case.").[9] Following a 1966 amendment,[10] § 482 provided:

---

**9.** Importantly, Maryland's notice-prejudice statute was enacted before the widespread issuance of claims-made policies. It is this chronology that perhaps explains the "inherent tension between [notice-prejudice legislation] and claims-made policies." Kathleen E. Wherthey, *Developments in Maryland Law, 1992–93: Insurance: New Life for the Claims–Made Liability Policy in Maryland*, 53 MD. L.REV. 948, 949 (1994).

**10.** As stated in *St. Paul Fire & Marine Insurance Co. v. House*, 315 Md. 328, 332, 554 A.2d 404, 406 (1989): "In its original form, § 482

> **Disclaimer of coverage because of lack of notice or cooperation from insured.**
>
> Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

One commentator offered three potential reasons the General Assembly moved so quickly responding to *Watson:*

> First, an aura of unfairness emanates from a situation in which an insurance company is permitted to disclaim liability when it is not prejudiced by the insured's breach of a condition precedent. In such a situation, the insurer receives an unjustifiable windfall. Second, the *Watson* rule allows an unreasonable forfeiture by permitting the insurer's assertion of a technical irregularity to deny protection for which the insured has paid. Finally, allowing an insurer to disclaim liability has the undesirable effect of leaving victims of automobile accidents uncompensated by their paid-for insurance coverage.

*A Legal Process Analysis for a Statutory and Contractual Construction of Notice and Proof of Loss Insurance Disclaimers,* 38 Md. L.Rev. 299, 309–10 (1978).[11]

Chronologically, the next case shaping Maryland's modern notice-prejudice jurisprudence is *House, supra.* In *House,* an

---

applied only to motor vehicle policies. By Ch. 205 of the Acts of 1966, the General Assembly repealed and reenacted the statute" to apply to any liability policy.

**11.** *See also* 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 193:49 (3rd ed. 2005) ("[T]hree rationales [for a prejudice requirement] are particularly pervasive—1. The adhesive nature of insurance contracts. 2. The public policy objective of compensating tort victims. 3. The inequity of the insurer receiving a windfall due to a technicality.").

insurer issued a "physicians and surgeons professional liability policy" providing that "[a] claim is made on the date you *first* report an incident or injury to us or our agent." *House*, 315 Md. at 331, 554 A.2d at 405. House had a series of annual policies the last of which ended on 1 January 1986. *See House*, 315 Md. at 330, 554 A.2d at 405. Allegedly, House performed surgery on a patient and left part of a needle in her knee; St. Paul, however, declined to defend House, claiming that it did not receive notice of the claim until February 1986, after the policy had expired. *See House*, 315 Md. at 331, 554 A.2d at 405–06. "We granted certiorari ... to determine whether § 482 applies when an insurer asserts that there is no coverage under a 'claims made' policy because the claim was not made while the policy was in effect." *House*, 315 Md. at 330, 554 A.2d at 405. Ultimately, we declined to reach that question, holding instead that the "issue arises only if the policy here involved is construed as the insurer contends .... [but], we do not accept the policy construction on which the insurer's argument is premised." *Id.*[12]

Although the Court could not have known it at the time, in advancing Maryland's notice-prejudice jurisprudence, of greater significance in *House* was Chief Judge Robert C. Murphy's dissent, which was joined by Judges McAuliffe and Blackwell. The dissent began by disagreeing with the Majority opinion's conclusion that the policy was ambiguous as to when a claim was made; in his view, "[i]t is ... clear that reporting is a

---

12. We explained that "[t]he ordinary meaning of 'claim made' refers to the assertion of a claim by or on behalf of the injured person against the insured." *House*, 315 Md. at 333, 554 A.2d at 407. Because the injured patient initiated a medical malpractice claim against House during the policy period, the "claim was made, in the ordinary meaning, during the policy period." *Id.* St. Paul contended, however, that the policy's definition of when a claim is made—"on the date you *first* report an incident or injury to us or our agent"—changed the ordinary meaning of "claim made." *Id.* We held that, considering the policy as a whole—*i.e.*, reading more than just the "When is a claim made?" section—the policy was ambiguous as to when a claim was made, and, thus, we resolved such ambiguity against the party who prepared the contract, *i.e.*, St. Paul as the insurer. *House*, 315 Md. at 341, 554 A.2d at 410.

prerequisite to coverage...." *House*, 315 Md. at 342, 554 A.2d at 411 (Murphy, C.J., dissenting).[13] The dissent proffered potential policy rationales for the adoption of approaches, like Maryland's, requiring insurers denying coverage of claims for reasons related to notice deficiencies to make a showing of prejudice. *See House*, 315 Md. at 345–47, 554 A.2d at 412–13. First, the dissent noted that many "courts have found that the strict contractual condition precedent approach creates a forfeiture," explaining that:

> [A]lthough the policy may speak of the notice provision in terms of "condition precedent," ... nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for.... Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach.

*House*, 315 Md. at 345, 554 A.2d at 413 (quoting *Cooper v. Gov't Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870, 873–74 (1968)). Second, the dissent explained that another rationale "is based upon the purpose and function of the notice provision":

> The purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate

---

**13.** With all due respect to the Bluebook, beyond this point in this opinion, we shall omit the parenthetical "(_____, J., dissenting)" from our pinpoint citation format, unless it is unclear from context that it is the dissenting opinion to which we are referring. *See* Bluebook Rule 10.6.1(a); *see also* Richard A. Posner, *The* Bluebook *Blues*, 120 YALE L.J. 850, 852 (2011) ("I have not read the nineteenth edition [of the Bluebook]. I have dipped into it, much as one might dip one's toes in a pail of freezing water. I am put in mind of Mr. Kurtz's dying words in *Heart of Darkness*—'The horror! The horror!'—and am tempted to end there."); *Id.* at 857 ("When I was a law student, *The Bluebook* was in its tenth edition (published in 1958) and had grown to 124 pages. In the fifty-two years since, it has increased in length by almost four hundred percent. As a result, it is even less valuable than it was a half-century ago. The nineteenth edition is twice as long as the sixteenth. Will this mindless growth ever cease?").

investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition, either through settlement or defense of the claim....

[A] reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively. In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

*House,* 315 Md. at 346–47, 554 A.2d at 413 (quoting *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 197 (1977)).

In addition to offering potential policy reasons undergirding the Legislature's passage of former § 482, Chief Judge Murphy explained the distinction between "occurrence" policies and "claims-made" policies.

Coverage in an "occurrence" policy is provided no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations of actions provisions, providing the act complained of occurred during the policy period. Because the insurer's liability in such policies ordinarily relates to a definite, easily identifiable and notorious event such as an automobile accident, a fire, a slip and fall injury, or a ship collision, the insurer is ordinarily able to conduct a prompt investigation of the incident and make an early assessment of related injuries and damages with the result that actuarial considerations permit relative certainty in estimating loss ratios, establishing reserves, and fixing premium rates.

*House,* 315 Md. at 349, 554 A.2d at 414 (quoting *Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127, 131 (1984)). Occurrence policies differ from claims-made policies, the latter of which are "of relatively recent origin and were developed primarily to deal with situations in which the negligent act is difficult to pinpoint and may have occurred over an extended period of time." *House,* 315 Md. at 349, 554 A.2d at 414. Regarding claims-made policies, we observed:

> [T]he error or omission may be a discrete act or failure to act, or it may consist of a lengthy process and remain latent and undiscoverable for a number of years. Examples include a physician's misdiagnosis, an attorney's fraudulent concealment, or an architect's defective design. From an underwriting perspective, occurrence policies are unrealistic for such risks because of the long or open 'tail' exposure which results. When the 'event' intended to be covered cannot easily be fixed and the liability for the consequent injury extends long into the future, often well after expiration of the policy, considerations of inflation, upward spiraling jury awards, and legislative and judicial adoption of newly developing concepts of tort law mean that actuarial factors, including fixing premium rates and establishing adequate reserves, are highly speculative. The result, logically, is the establishment of a premium rate schedule sufficiently high to accommodate 'worst scenario' jury verdicts returned years after the error, omission, or negligent act.

*House,* 315 Md. at 349–50, 554 A.2d at 414–15 (quoting *Stine,* 349 N.W.2d at 131).[14] The dissent de-constructed claims-made

---

14. The Michigan Supreme Court, in *Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127, 131–32 (1984), explained the benefits to the insured in purchasing a claims-made policy:

> Since the insurer can limit the duration of its exposure to the term of the policy currently in force, the more precise actuarial data available enable it to charge a lower premium than would be necessary for an occurrence policy. Another advantage to the insured is the ability, if desired, to purchase insurance which will cover acts or omissions during a period prior to the inception of the policy, providing only that any claim is made during the policy period and any extensions

policies even further, distinguishing between "pure" claims-made policy, and "reporting-type" claims-made policies:

> So-called "pure" claims made policies generally define "claims made" as all claims brought against the insured within the policy period. The claim made against the insured party is the event which invokes coverage. The policy may also be of a "reporting" type, defining "claims made" as all claims made against the insurer by the insured during the policy period. Thus, the claim made against the insurer is the event invoking coverage in a "reporting" type of claims made policy.

*House,* 315 Md. at 350–51, 554 A.2d at 415.

Chief Judge Murphy applied the aforementioned principles to former § 482 and the insurance policy in *House.* First, the dissent disagreed with the majority's determination that the policy was ambiguous as to when a claim is made, concluding that "[i]t is ... clear that reporting is a prerequisite to coverage...." Regarding whether § 482 applied to the policy, Chief Judge Murphy explained that, although § 482 states that it applies to "any policy of liability insurance," the statute only *"potentially* applies to 'any' liability insurer or policy," considering that "the statute [also] requires that the basis for the disclaimer or denial of coverage be that 'the insured has *breached* the policy ... by not giving the requisite notice to the insurer.' " *House,* 315 Md. at 355, 554 A.2d at 417 (emphasis in original). The dissent framed next the possibly penultimate or even dispositive question as whether § 482 applied to the policy in *House:* "The fundamental question now is whether, at the time [House] reported the ... claim, there existed a contract between the parties, *for one cannot breach a contract*

---

thereof. Claims made policies are also useful to the professional person to provide excess coverage in addition to 'occurrence' policy coverage purchased much earlier, the maximum limits of which are now unrealistically low....

*See also* Wherthey, *supra,* at 951 (1994) ("[Claims-made policies] serve two purposes: to protect insureds from inequitable forfeitures of purchased coverage on immaterial grounds, and to protect insurers' interests in obtaining reasonably complete and prompt information on which to base investigations and construct defenses.").

*which is not in existence ...." House,* 315 Md. at 355–56, 554 A.2d at 418 (emphasis added). As the dissent explained:

To answer this question, I look again to the nature of claims made and occurrence policies. Both types of policies include provisions which define (1) the events for which coverage is provided and (2) when and how coverage can be initiated. For example, an occurrence policy has a fixed time period defining what specific events or occurrences will be covered. When this time period ends, however, the insurer's responsibilities under the policy do not end, for it may be held liable for the covered events, barring statutes of limitations, at any time thereafter.

Claims made policies are almost the mirror image of occurrence policies in that they often cover claims based on events which occurred many years before the policy came into effect, but limit the scope of coverage to claims based on these events which are made within the limited time period of the policy. Unlike the occurrence policy, the insurer's potential liability ends when the policy expires.

Therefore, *when the claims made policy at issue here expired there was nothing left. The policy could not be breached because there was no longer a policy to be breached. Any claim made after its expiration is of the same effect as an accident or event which occurs after the "expiration" of an occurrence policy. There was no breach; there was simply no coverage. I therefore think that § 482 is inapplicable to a "reporting" type of claims made policy when the claim is made after the expiration of the policy.*

*House,* 315 Md. at 356, 554 A.2d at 418 (emphasis added).

For clarity purposes, we think it important to restate Chief Judge Murphy's "holdings," had he been writing for a majority of the Court at the time. First: In a "pure" claims-made policy, a claim is "made" when a claim (typically a lawsuit) is brought against the insured during the policy period. Second: In a "reporting-type" claims-made policy, a claim is "made" when, in addition to a claim being brought against the insured during the policy period, the insured reports or notifies the

insurer of the claim made against the insured. Third: In a claims-made policy, there can be no breach of the policy where a claim is "made" after the policy's expiration (whether by (1) the insured having a claim filed against it during the policy period, as in a "pure" claims-made policy, or, (2) the insured having reported or notified the claim lodged against the insured to the insurer, as in a "reporting-type" claims-made policy) as one cannot "breach" a policy that is no longer in existence. Fourth: In a claims-made policy, then, where a claim is "made" after the policy expiration, § 482 does not apply to require the insurer to show prejudice, as the statute, on its face, applies only when an "insured has breached the policy."

The importance of the dissent in *House* became manifest four years later in *T.H.E. Insurance Co. v. P.T.P. Inc.*, 331 Md. 406, 407, 628 A.2d 223, 223 (1993), in which "we appl[ied], in substance, the analysis presented in Chief Judge Murphy's dissent in *House.*" In *T.H.E.*, P.T.P., the owner of a go-kart track, was insured by T.H.E. under a claims-made comprehensive general liability policy running from 2 April 1987 to 2 April 1988, and which required P.T.P. to "see to it that [T.H.E.] receive written notice of the claim as soon as practicable," and that included a "Basic Extended Reporting Period" of sixty days. *T.H.E.*, 331 Md. at 412, 628 A.2d at 225–26. Importantly, the policy provided that "[a] claim ... seeking damages will be considered to have been made *when written notice of such claim is received and recorded by [T.H.E.]*. . . ." *T.H.E.*, 331 Md. at 411–12, 628 A.2d at 225 (emphasis added). A patron was injured at P.T.P.'s track on 27 August 1987. On 6 June 1988—after the policy and the sixty-day extended reporting period expired—counsel for the injured patron made a claim against P.T.P. for damages. *See T.H.E.*, 331 Md. at 408–09, 628 A.2d at 223–24. T.H.E., upon learning of the claim against P.T.P., denied coverage of the claim. *See T.H.E.*, 331 Md. at 409, 628 A.2d at 224. P.T.P. filed a complaint for declaratory judgment, arguing that T.H.E. had a duty to defend and indemnify against the patron's claim. The Circuit Court declared that the T.H.E. policy obligated T.H.E.

to defend the claim, considering that § 482 required T.H.E. to show it had been prejudiced by the late-delivered claim, which it failed to do. *See id.*

On appeal, T.H.E. argued that, because its policy with P.T.P. applied only to claims "first made against any insured during the policy period," or during the sixty-day extension, where the injured patron did not file a claim against P.T.P. until after the policy and extension period, there was simply no coverage for that claim. *T.H.E.*, 331 Md. at 413, 628 A.2d at 226. In response, P.T.P., relying on § 482, argued that the statute required T.H.E. to show actual prejudice resulting from the delay. *See id.* The Court, through Judge Rodowsky, relying on the dissent in *House* and the "overwhelming weight of authority, measured both numerically and by persuasiveness," held:

> Here, T.H.E. does not deny coverage because of an alleged material failure by P.T.P. to perform a covenant to give notice, or to satisfy a policy provision that might be phrased as a condition that must be satisfied to prevent the loss of coverage that otherwise would apply. In this case the extended reporting period under the original policy had expired before P.T.P. reported the Buckley claim to T.H.E. The original policy had come to an end with respect to newly reported claims. Section 482 could no more revive the original policy to cover the Buckley claim than § 482 could reopen an occurrence policy to embrace a claim based on an accident that happened after the end of the policy period.[15]

*T.H.E.*, 331 Md. at 415, 416 628 A.2d at 227, 228. Judge Rodowsky explained further that:

---

15. The ultimate effect of a holding applying § 482 to claims filed against an insured after the termination date of claims-made policies, it was argued, would have been the "eventual elimination of the claims-made form of liability coverage from the Maryland insurance market." Wherthey, *supra*, at 958. In fact, an amicus in *T.H.E.* stated that our affirmance of the Court of Special Appeals in *House* "probably induced a wary, wait-and-see willingness by insurers to issue new claims-made liability policies." *Id.* (citing Brief of Amicus Curiae Scottsdale Insurance Company, at 3).

In the case before us the original policy had expired before a claim was asserted against P.T.P. That expiration resulted from the terms of coverage and is not attributed to a "breach by P.T.P." The problem at which § 482 is directed is not presented.

*T.H.E.*, 331 Md. at 421, 628 A.2d at 230.[16]

Judges Eldridge and (now Chief Judge) Bell dissented in *T.H.E.* Their first quarrel with the Majority opinion was that it did "not distinguish between the provisions of a claims made policy which establish coverage and the provisions which require notice." The dissent explained:

> Section 482 deals with a liability policy's *notice* provision, *i.e.*, notice by the *insured to the insurer* of the happening of an event triggering coverage. It does not apply to the portion of the policy which establishes the essential terms for coverage, *i.e.*, an accident/occurrence or the making of a claim by the injured third party. In a claims made policy the requirement that a claim against the insured be made during the policy period essentially defines the coverage available. The *notice* of which § 482 speaks, in a claims made policy, is the notice by the insured to the insurer that a claim against the insured has been made during the policy period. Both the language and purpose of § 482 require that it be applied to the clause in a claims made policy providing for notice to the insurer.

---

16. P.T.P. also contended that an unfavorable report from the Maryland Senate Finance Committee received by a bill proposed to amend § 482, which bill proposed to clarify "that an insurer denying coverage under a claims-made insurance policy due to the insured's failure to report the claim within the policy period shall not be required to establish ... actual prejudice," evinced a legislative intent "to maintain the 'very broad' language of the statute...." *T.H.E.*, 331 Md. at 421–22, 628 A.2d at 230. We rejected this argument, noting that "the fact that a bill on a specific subject fails of passage in the General Assembly is a rather weak reed upon which to lean in ascertaining legislative intent," and that such a "weak reed does not overcome the language of § 482 and its purpose ... as demonstrated by the body of case law that has developed on the issue presented here." *T.H.E.*, 331 Md. at 422, 628 A.2d at 231.

The majority, however, contends that, because T.H.E. Insurance Co. defined the time at which a claim is made as "when written notice of such claim is received and recorded by us," this claims made policy makes the reporting of the claim by the *insured* to the *insurer* the insurable event. By allowing the insurer to define claims made in terms of notice to the insurer, and by holding that § 482 does not apply to this provision in a claims made policies, the majority opens the door for insurers to circumvent the statute.

*T.H.E.*, 331 Md. at 425, 628 A.2d at 232.

## II. Development of Notice–Prejudice Law After *T.H.E.*

In 1996, in codifying the Insurance Article of the Maryland Code, the Legislature recodified former § 482 to Maryland Code (1997, 2006 Repl.Vol.), Insurance Article § 19–110. *See* Chapter 11 of the Acts of 1996. After a minor 1997 revision,[17] § 19–110 now provides:

An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

The revisor's note to the 1996 codification notes that "[t]his section is new language derived without substantive change from former Art. 48A, § 482." Aside from moving the statute from former Article 48A to the Insurance Article, Maryland's notice-prejudice jurisprudence went dark largely after *T.H.E.*[18] The growth of notice-prejudice jurisprudence nation-

---

17. The 1997 revision added the word "actual" before "prejudice." *See* Chapter 11 of the Acts of 1996; Chapter 57 of the Acts of 1997.

18. In *Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 187, 879 A.2d 81, 96 (2005), we—noting § 19–110's embodiment of "the public policy of this state that an insurer must show prejudice before disclaiming coverage based on the insured's breach of a notice provi-

wide, however, was not stunted similarly.[19]

It now may be said fairly that, although some courts have held that their respective notice-prejudice rules apply to claims-made policies, "a majority of courts that have addressed the issue have found that the prejudice requirement does not apply equally to claims-made policies." 1 JEFFREY E. THOMAS, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 4.04[4][d][i] (2010). One further aspect of the jurisprudence developed in the nearly-two decades since *T.H.E.* is the distinction first mentioned in Maryland in Chief Judge Murphy's dissent in *House, supra*—namely, that of "pure" claims-made policies and "claims-made-and-reported" policies.

> The major distinction between a claims-made and a claims-made and reported policy is just as the names suggest. Under a claims-made policy, a claim must be made against the insured during the policy period, but need only be reported to the insurer "promptly," or "as soon as practicable," but not necessarily during the policy period. By contrast, a claims-made and reported policy requires the claim both be made against the insured and reported to the insurer during the policy period, or any extended reporting period.

BECK, *supra* § 33.05; *see Jones v. Lexington Manor Nursing Ctr., LLC*, 480 F.Supp.2d 865, 868 (S.D.Miss.2006) (quoting *Chicago Ins. Co. v. Western World Ins. Co.*, 1998 WL 51363, at

---

sion"—did "adopt the prejudice rule." That is not to say, however, that, prior to *Local Government Insurance Trust*, we did not require a showing of prejudice. Section 19–110 requires as much. Rather, we stated merely that, in requiring an insurer to show prejudice when it denies coverage based on a breach of a notice provision, we were not unlike the overwhelming majority of our sister states. *See Local Gov't Ins. Trust*, 388 Md. at 184, 879 A.2d at 94 (noting that, as of 2005, "[t]hirty eight states and two territories have adopted the 'prejudice rule' ").

**19.** *See* 13 COUCH ON INSURANCE, *supra* § 186:6 ("[A]s this text is written, the legal field as a whole appears to be in the midst of a transition from strict forfeitures for breach of notice ... to a considerably more liberal view that attempts to balance the opposing interests and allow the insurer to avoid coverage only when that is necessary to protect its interests.").

*1, 1998 U.S. Dist. LEXIS 1109, at *3 (N.D.Tex. Jan. 23, 1998)) ("Whereas [a claims-made policy] requires only that a claim be made within the policy period, [a claims-made-and-reported policy] also requires that the claim be reported to the insurance company within the policy period.").

Nationwide, courts' holdings regarding the applicability of notice-prejudice rules to claims-made-and-reported policies have been uniform; "[i]n those jurisdictions that have examined the distinction between claims-made and claims-made-and-reported policies, the courts have uniformly relieved the insurers from any requirement to prove prejudice under the latter form of coverage." 3 NEW APPLEMAN ON INSURANCE, *supra* § 20.01[7][b]. Applying Maryland law, the federal Fourth Circuit Court of Appeals and the United States District Court for the District of Maryland—relying on *T.H.E.*—held that § 19–110's provisions do not apply to claims-made-and-reporting policies. *See Janjer Enters., Inc. v. Executive Risk Indem., Inc.,* 97 Fed.Appx. 410, 414 (4th Cir.2004) ("Maryland courts have held that 'claims made and reporting' policies ... are not subject to its prejudice requirement."); *Maynard v. Westport Ins. Corp.,* 208 F.Supp.2d 568, 574 (D.Md.2002) (quoting *The Rouse Co. v. Fed. Ins. Co.,* 991 F.Supp. 460, 465 (D.Md.1998)) ("Section 19–110, however, only applies to true 'claims made' policies. 'Under Maryland law, the "actual prejudice" requirement of § 19–110 does not apply to a "claims made plus reporting" policy....' ").

### III. The Present Case

Sherwood contends first that, under a plain reading of § 19–110, the statute applies to all liability policies, regardless of whether deemed "pure claims made policies" or "claims-made-and-reported policies." Further, Sherwood asserts that

under *House* and *T.H.E.,* whether Section 19–110 comes into play turns on the basis for the denial of coverage. If there is no coverage because a claim was not "made" during the policy period [as Sherwood argues was the case in *T.H.E.,* where the injured patron did not make a claim for damages against the insured until after expiration of the

relevant policy], then the statute is not involved because the claim was never a covered claim. If a claim was "made" during the policy period [as Sherwood argues is the case at present, where both the Massachusetts and the Israeli actions were filed when the 2007 Policy was in effect], and the denial is based on the insured's breach of a notice condition or covenant, then under the statute an insurer must show actual prejudice.

Sherwood distinguishes the insurance policy in *T.H.E.*—ultimately held to be outside the scope of what is now § 19–110—from the Policy in the present case. That is, Sherwood contends that, although the policy in *T.H.E.* provided that a claim was not "made" until "written notice of [a] claim is received and recorded by us," the 2007–08 Policy provided that a "civil, criminal, administrative or arbitration proceeding made against any Insured" is made when suit is brought against Sherwood, not when it is reported to Great American.[20] In the alternative, Sherwood avers that the 2007–08 Policy is ambiguous and thus, should be construed against Great American as the drafter. Finally, if necessary, Sherwood would have us overrule *T.H.E.*

Great American, on the other hand, urges that "Maryland courts consistently have held that the statute does not apply to 'claims made plus reporting' policies, like the Great American Policy at issue here," citing *Janjer, Maynard,* and *Rouse, supra.* As the argument goes, Great American's policy is clearly a claims-made-and-reporting policy because it states expressly that, not only must a claim be made during the Policy period, but that notice of claim must be provided to it no later than ninety days after the expiration of the Policy. Such a conclusion, it continues, is "consistent with the overwhelming majority view of courts in other states, which have

---

**20.** Pursuant to III.A. (1) of the Policy, "a written demand for monetary or non-monetary relief" is "made" when it is "reported to the Insurer." The absence of a reporting requirement from the definitional section of III.A.(2)—the pertinent section in the present case—Sherwood argues, proves that notice was not a "trigger of coverage" for the claims in the present case.

concluded that the prejudice rule does not apply to claims made plus reporting policies." Accordingly, Great American suggests that *T.H.E.* "fully supports and, in fact, dictates the trial court's decision in this case."

It would be simple—if not lazy—for us to conclude that *T.H.E.* held that § 19–110 does not apply to claims-made policies, pronounce the Policy a claims-made policy, and move on to the next case. We decline to follow that path. *T.H.E.* is not dispositive wholly of the present case. Further, it would be simple to focus on the portion of the Policy requiring Sherwood to give notice "as soon as practicable, but in no event later than ninety (90) days after the end of the Policy Period," declare the Policy a "claims-made-and-reported" policy, and jump on the bandwagon of other jurisdictions that decline uniformly to extend notice-prejudice rules to claims-made-and-reported policies. But no, we shall take the path less traveled. Our emphasis should not be on other jurisdictions' treatment of claims-made and claims-made-and-reported policies vis à vis their respective notice-prejudice rules because most of those cases did not confront or construe a statute like Maryland's. Thus, our emphasis must be on the text of, and policies underlying, § 19–110.

As noted, *T.H.E.* is not dispositive of the issue before us. The Court in *T.H.E.* was careful to circumscribe its holding by stating that "[i]t would be an incorrect oversimplification to express the issue here to be whether § 482 applies at *all* to claims made policies." *T.H.E.*, 331 Md. at 414 n. 7, 628 A.2d at 226 n. 7 (emphasis added).[21] One reading of *T.H.E.*, then, is that it limited its holding to stating that § 482 "does not extend coverage under claims-made policies to include claims

---

21. It is a mischaracterization of *T.H.E.* to conclude that it "ruled that claims-made policies are subject to the[ ] statute[ ]." 4 NEW APPLEMAN ON INSURANCE, *supra* § 28.03[3][b][iii] (stating as such). Further, we disavow ourselves of language in *Janjer, Maynard,* and *Rouse* suggesting that *T.H.E.* be read to stand for the proposition that § 19–110 does not apply to all "claims-made-and-reporting policies." Notice provisions, even in claims-made-and-reporting policies, must be deemed covenants such that failure to abide by them constitutes a breach of the policy sufficient to make § 19–110 applicable to such policies.

made *after the policy expires*," but said nothing about a situation in which claims are made against the insured *before* the expiration date of the policy (as in the present case).[22] Wherthey, *supra*, at 956 (emphasis added). Further, *T.H.E.* "addressed only one factual situation under a rather ambiguous policy, leaving important issues unresolved." Wherthey, *supra*, at 958. As noted by one commentator:

> There are four temporal variables in late claim suits involving claims-made and hybrid policies: the date of the initial occurrence, the date the insured notifies the insurer of the occurrence, the date the injured party presents a claim against the insured, and the date the insured reports the claim to the insurer. *T.H.E. Insurance Co.* presented the factual scenario most favorable to the court's conclusion that section 482 did not apply; the accident occurred after the retroactive date, and neither the insured's report of the occurrence, nor the injured party's claim against the insured, nor the insured's report of the claim to the insurer, took place within the policy period.

Wherthey, *supra*, at 959. The facts of the present case are distinguishable from those in *T.H.E.*, considering that it is undisputed that "the date the injured party presents a claim against the insured"—here, the Massachusetts and Israeli actions—was within the Policy coverage period,[23] whereas, in *T.H.E.*, it was not. Accordingly, *T.H.E.* does not control wholly the present case.

To the extent the parties attempt to squeeze a square peg— that is, Maryland's notice-prejudice statute, as embodied in § 19–110, and our jurisprudence—into a round hole—that is, the notice-prejudice jurisprudence of other states and jurisdictions—they are unpersuasive. *See Bozman v. Bozman*, 376

---

**22.** *T.H.E.* does *not* stand for the proposition that the statute "does not apply to a 'claims made plus reporting' policy...." *Rouse Co. v. Fed. Ins. Co.*, 991 F.Supp. 460, 465 (D.Md.1998) (citing *T.H.E.* for such a proposition); *see Maynard v. Westport Ins. Corp.*, 208 F.Supp.2d 568, 574 (D.Md.2002) (same).

**23.** *But see supra* note 4.

Md. 461, 490, 830 A.2d 450, 467 (2003) ("[D]ecisions of our sister jurisdictions are not binding on this Court and ought not dictate the course of jurisprudence in the State of Maryland."). Of the more than three-dozen states adopting a notice-prejudice rule, *see Local Gov't Ins. Trust*, 388 Md. at 184, 879 A.2d at 94, it appears that only two did so legislatively, as Maryland has.[24] *See* MASS. GEN. LAWS ch. 175, § 112 (2010);[25] WIS. STAT.

---

**24.** Missouri promulgated its notice-prejudice rule by regulation, not statute. *See* MO.CODE REGS. ANN. tit. 20, § 100–1.020(1)(D)(2009) ("No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time following any loss, unless the failure operates to prejudice the rights of the insurer."). Further, the recent decision by the Texas Supreme Court in *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.*, 288 S.W.3d 374, 388 (Tex.2009), cites to a Texas State Board of Insurance Order (No. 23080, 13 March 1973), that provides:

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

Finally, at oral argument before this Court, Great American offered that Michigan adopted a notice-prejudice statute. Although Great American does not cite to the statute in its brief, it well may be that it refers to MICH. COMP. LAWS § 500.3008 (2010), which provides:

> In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and also a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

This statute, however, does not require an insurer, disclaiming on grounds of late-filed notice, to show how it was prejudiced by such a delay; rather, it requires the insured to show that it was not "reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible." *See State Bar of Mich. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2008 WL 4901108, at 14–15, 2008 U.S. Dist. LEXIS 94029, at *50 (E.D. Mich. 10 November 2008) (citing, not a statute, but the *case* of *Wendel v. Swanberg*, 384 Mich. 468, 185 N.W.2d 348 (1971), for the proposition that "[p]rejudice to the insurer is a material element in determining whether notice is reasonably given").

**25.** MASS. GEN. LAWS ch. 175, § 112 (2010), provides, in pertinent part,

§ 631.81 (2010) [26]; *see generally* Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Claim, etc., or with Respect to Forwarding Suit Papers*, 32 A.L.R.4TH 141 (1984). Further, neither the Massachusetts nor the Wisconsin statutes require an insured's failure to abide by a policy's notice provisions to constitute a breach of the policy before those statutes apply, as Maryland's does. As we will see infra, this concept is crucial to the outcome of this case.

 We turn to the text of, and the policies underlying, § 19–110. Section 19–110 begins by stating that "[a]n insurer may disclaim coverage ... on the ground that the insured ... *has breached the policy* .... " Accordingly, in order for § 19–110 to be in play, the insured must breach the insurance policy "by failing to cooperate with the insurer or by not giving the insurer required notice." [27] *See House*, 315 Md. at 355, 554 A.2d at 417 (stating that, because the statute requires the insured to have "breached the policy," the statute only *"potentially* applies to 'any' liability insurer or policy") (emphasis in original). Central to whether § 19–110 applies to require Great American to show that it was prejudiced by Sherwood's late-delivered notice is determining whether, in giving Great American notice more than ninety days after the expiration

---

> An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

**26.** Wis. Stat. § 631.81 (2010), provides, in pertinent part:

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

**27.** Great American does not contend that Sherwood "failed to cooperate."

date of the 2007–08 Policy, Sherwood "breached the policy."[28] If the notice provisions of the 2007–08 Policy are "conditions precedent" to coverage, then Sherwood does not "breach the policy" by failing to obey the notice provisions; the nonoccurrence of a condition precedent does not constitute a breach, it merely relieves the other party from performing under the contract/policy. *See* RESTATEMENT (SECOND) OF CONTRACTS § 225 (1981) ("Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur."); 8 CATHERINE M.A. McCAULIFF, CORBIN ON CONTRACTS § 30.13 (Rev. ed. 1999) ("If [a] condition consists of a personal action, it may properly be said not to be performed; but nonperformance is not a breach of contract unless the person promised to render the performance—to perform the condition."). On the other hand, if the notice provisions are deemed covenants, Sherwood's failure to give Great American notice no later than ninety days after the expiration date of the 2007–08 Policy would constitute a "breach of the policy," such that § 19–110 would apply to require Great American to show that it was prejudiced by Sherwood's late-delivered notice.

To be sure, the "Notice of Claim" section of the Policy begins by stating that giving requisite notice is a "condition precedent to [Sherwood's] rights under this Policy." If we treat them as such, Sherwood's failure to give notice timely to Great American would be the non-occurrence of a condition, and not a breach. This language—explicit and unequivocal as it may be—does not save the day for Great American when considering the purpose and effect of § 19–110. "[T]he general rule followed by courts throughout the country and ... certainly the rule followed by this Court prior to 1966" was that

> even if the language did not use the word "condition," the duty of notification was regarded as creating a condition

---

**28.** A breach is "a failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *House*, 315 Md. at 355, 554 A.2d at 417.

precedent to the insurer's obligation to defend or indemnify, and the lack of any prejudice to the insured from the failure to give prompt notice was immaterial.

*Sherwood Brands,* 347 Md. at 41, 698 A.2d at 1082; *see Lowitt and Harry Cohen Ins. Agency v. Pearsall Chem. Corp. of Md.,* 242 Md. 245, 259, 219 A.2d 67, 76 (1966) (citing *Watson, supra,* for the proposition that "[t]he general rule is that a provision in an insurance policy requiring notice by the insured to the insurer as soon as practicable, when it is made a condition precedent, must be complied with in order to obligate the insurer"); *T.H.E.,* 331 Md. at 414, 628 A.2d at 227 ("*Watson* applied a strict condition precedent analysis to the insured's obligation to give notice of an accident under an . . . automobile liability policy."). Former § 428 was enacted effectively to overrule *Watson,* discard the strict condition-precedent approach, and "make[ ] policy provisions requiring notice to, and cooperation with, the insurer *covenants and not conditions.*" *Sherwood Brands,* 347 Md. at 42, 698 A.2d at 1082 (quoting *House,* 315 Md. at 332, 554 A.2d at 406) (emphasis added). Therefore, notwithstanding that Great American labeled the notice provisions in the Policy as conditions precedent to coverage, § 19–110 mandates that the notice provisions of the Policy be treated as covenants, not conditions. By not giving notice to Great American within the time frame stated in the notice provisions, Sherwood "breached the policy . . . by not giving the insurer required notice" as provided in § 19–110, and, thus, the statute applies to require Great American to show how it was prejudiced by Sherwood's late-delivered notice in investigating, settling, or defending of the Massachusetts and Israeli actions.

This conclusion is consistent entirely with *T.H.E.*[29] In *T.H.E.,* the policy provided that "[t]his insurance applies . . . if

___

29. At argument before this Court, Great American cited *Stachowski v. State,* 416 Md. 276, 291, 6 A.3d 907, 916 (2010), for the proposition that:

The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation.

a claim for damages ... is first made against any insured during the policy period." *T.H.E.*, 331 Md. at 411, 628 A.2d at 225. Thus, a claim being "made" within the policy period was the functional equivalent of a condition precedent to coverage; if a claim was not made during the policy period, the notice provisions did not come into play, as the insurer was under no obligation to provide coverage for the claim. The facts were such in *T.H.E.* that the suit was not filed against P.T.P. (the insured) until after the expiration of the policy. *See T.H.E.*, 331 Md. at 413, 628 A.2d at 226. The suit not being filed until after the expiration of the policy was not a "breach" of the policy, but rather, the non-occurrence of a condition precedent, *i.e.*, that a claim be "made" during the policy period. In the absence of a breach of the policy, as required by the statute, we were correct to hold that former § 482 did not apply to require T.H.E. to prove that it was prejudiced by the late-delivered notice. In the present case, this condition precedent—that a claim be "made" during the policy period—was satisfied, as it is undisputed that both the Massachusetts and Israeli actions were filed before the expiration of the Policy, putting the present case at odds, in this respect, with *T.H.E.* Because the two suits were filed against, and service made upon, Sherwood before expiration of the Policy, the notice provision—treated, under the statute, as a covenant and not a condition—triggers, and ultimately was breached by Sherwood. Accordingly, Sherwood has "breached the policy" in the present case, invoking § 19–110, and requiring Great

---

This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute.

We agree that the General Assembly, in not changing substantively the text of the statute in its 1996 codification of the Insurance Article, acquiesced to our holding in *T.H.E.* We need not, however, "overrule our prior interpretation of the statute" because, as explained *infra*, the present case is distinguishable from the facts with which we dealt in *T.H.E.*

American to demonstrate prejudice.[30]

We hold that § 19–110 does not apply, as was the case in *T.H.E.*, to claims-made policies in which the act triggering coverage—usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies—does not occur until after the expiration of the liability policy, as this non-occurrence of the condition precedent to coverage is not a "breach of the policy," as required by the statute. On the other hand, we hold that § 19–110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions. In the latter situation, § 19–110 mandates that notice provisions be treated as covenants, such that failure to abide by them constitutes a breach of the policy sufficient for the statute to require the disclaiming insurer to prove prejudice.

Lest one think that this opinion places Maryland's jurisprudence at odds with the majority of other jurisdictions to decide a similar question, we think it important to emphasize that Maryland's notice-prejudice jurisprudence was "at odds" with most other jurisdictions' jurisprudence well before the filing of this opinion. As noted *supra*, of the more than three-dozen states adopting a notice-prejudice rule, we are aware of only two other states that did so legislatively—Massachusetts and Wisconsin.[31] Further, neither the Massachusetts nor the Wisconsin statutes require a breach of the policy as a precondition to the applicability of their respective statutes. Ulti-

---

**30.** One commentator notes that "had the court [in *T.H.E.*] applied section 482 to claims filed after the termination date of claims-made policies, it would have extended indefinitely the time period of potential liability for claims-made policy issuers in Maryland." Wherthey, *supra*, at 958. We think it important to note that our holding does not "extend indefinitely the time period of potential liability" for insurers, as we limit application of § 19–110 to circumstances in which notice of a claim, triggering the requirement to give notice to the carrier, occurs before expiration of the policy.

**31.** *See supra* notes 25–26.

mately, we are guided only—to the exclusion of other states' notice-prejudice jurisprudence—by the text of, and the policies underlying, § 19–110. Of course, "[i]f the General Assembly did not so intend, it can amend or repeal the statute." *Ali v. CIT Tech. Fin. Servs.*, 188 Md.App. 269, 287, 981 A.2d 759, 769 (2009), *aff'd*, 416 Md. 249, 6 A.3d 890 (2010).

As explained *supra*, at note 7, Sherwood, in its motion for summary judgment, argued alternatively that, regardless of whether notice was proper under the 2007–08 Policy, "the 2008[–09] Policy defines the term claim in terms of when a complaint is served on an insured. As the underlying suit papers were served on Sherwood during the 2008[–09] Policy Period, notice was timely" under the 2008–09 Policy. In granting Great American's cross-motion for summary judgment and denying Sherwood's motion for summary judgment, the trial court did not address whether notice was timely under the 2008–09 Policy. Because Sherwood prevails here on the question actually decided by the Circuit Court, we shall not reach Sherwood's alternative argument. Accordingly, we vacate the judgment of the Circuit Court for Montgomery County and remand to that court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY GREAT AMERICAN INSURANCE COMPANY.**